## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Roger Mierzwa, on behalf of himself and
all other similarly situated,

     Plaintiff,

v.

Westminster Mint, Inc.,

     Defendant.

Civil Action No:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

    This class action is brought by Plaintiff Roger Mierzwa, on behalf of himself and all others similar situated who purchased coins from Defendant Westminster Mint, Inc. ("Westminster Mint" or "Defendant").

## INTRODUCTION

    1.    Defendant has an abysmal track record of engaging in fraudulent and unconscionable business practices selling bullion coins.  Defendant continues with its chicanery, to take advantage of unwary, and often elderly, investors, including Plaintiff, who have lost millions of dollars in the process.

    2.    Defendant's conduct violates Minn. Stat. §§ 325F.67 and 325F.69, subd. 1, and these violations give rise to a private cause of action for damages and equitable relief under Minn. Stat. § 8.31, subd. 3a, which provides that "[i]n addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to

in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. §§ 325F.67 and 325F.69 are among the laws referenced explicitly in Minn. Stat. § 8.31, subd. 1, which generally covers all state laws "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade . . . ."

3.      Because Plaintiff and other Class members are over the age of 62, an additional cause of action exists under Minn. Stat. § 325F.71, which applies to deceptive acts perpetrated against senior citizens (62 years old or older) and vulnerable adults. Under Minn. Stat. § 325F.71, subd. 4, as under Minn. Stat. § 8.31, subd. 3a, a person "injured by a violation of this section may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 325F.71, subd. 2 imposes an additional civil penalty of $10,000 per violation.

4.      Defendant's conduct violates Minn. Stat. § 325D.44 because it engaged in a deceptive trade practice.  Plaintiff and members of the Class are entitled to injunctive relief under Minn. Stat. § 325D.44, including an award of attorneys' fees and costs.

5.      The putative class is a nationwide Class with an Elder Subclass seeking damages, restitution, disgorgement, exemplary damages, injunctive relief and an award of attorneys' fees, and reimbursement of costs of suit and expenses.

6.      As set forth below, the Class, including the Elder Subclass, should be certified and the relief requested ordered as soon as possible.

## PARTIES

1.    Plaintiff Roger Mierzwa is an individual citizen residing in Pottstown, Pennsylvania. Plaintiff brings this action on behalf of himself and all others similarly situated.

2.    Defendant Westminster Mint, Inc. is a Minnesota corporation with its principal place of business located at 3300 Fernbrook Lane #160, Plymouth, Minnesota 55447.

## JURISDICTION & VENUE

3.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

4.    This Court has personal jurisdiction over Defendant because Defendant is incorporated in Minnesota, headquartered in Plymouth, Minnesota, and is at home in the state. Furthermore, Defendant has transacted business in this state, has purposefully availed itself of the state's laws and jurisdiction by soliciting customers in the state and delivering merchandise within the state, and has committed tortious acts within the state.

5.    Venue is proper in this district under 28 U.S.C. § 1391 because Defendant transacted its affairs with Plaintiff in this District, and a substantial part of the events giving rise to this action and the property that is the subject of the action is situated in this District.

## FACTUAL ALLEGATIONS

6.    Defendant is a Minnesota-based collectible coin company.

7.    Plaintiff Roger Mierzwa is currently 75 years old, an elderly man who lives in Pottstown, Pennsylvania. Plaintiff subsists on a fixed income.  Plaintiff is not in the

position to work or otherwise earn money if his savings run out or are absconded by fraudsters.

8.      Between 2010 and 2017, Plaintiff was solicited by Defendant over fifty (50) times over the telephone and through email correspondence.

9.      In September 2010, Plaintiff saw an ad by Westminster Mint selling a one (1) ounce Canadian Timber Wolf coin. Plaintiff called the number on the advertisement and spoke to Abel Nelson. After accepting the Canadian coin order, Nelson told Plaintiff that it was time for him to consider graded coins for investment purposes because the coins would only increase in value over time.

10.     Nelson indicated that graded coins were appreciating approximately 10% a year and the coins Westminster was selling were the "best of the best." Considering this and the other representations, Plaintiff was advised that these graded coins were an investment. Plaintiff was not asked, told, or offered to review anything on Defendant's website or other written materials, nor was he asked to sign anything.

11.     Defendant held itself as a grading and numismatic expert and represented to Plaintiff that coins with grading from companies such as American Numismatic Association Certification Service (better known as "ANACS") were of the highest value. Plaintiff later learned that Defendant incentivized its account executives to sell ANACS coins to its least-educated customers because the sale of ANACS coins produced the highest profit margins.

12.    Because of these representations regarding Defendant's commemorative coins, Plaintiff decided to purchase them. "Congratulations" would become a repeated theme over the years in which Plaintiff understood he had acquired another valuable coin.

13.    Indeed, during these phone calls, Defendant induced Plaintiff to purchase over 100 coins at a price of over $294,000.00.

14.    Defendant knew that Plaintiff was using funds from his IRA retirement account to invest in these graded coins because Defendant told Plaintiff he could realize a greater return on his investment in coins rather than keeping the funds in his IRA.

15.    In one purchase, Plaintiff paid over $2,999.00 for a single coin.

16.    However, subsequent appraisals show that the coins are worth less than 20% of what Plaintiff was asked to pay.

17.    Defendant never told Plaintiff that the coins' market value of was worth substantially less than what he was buying.

18.    Defendant never told Plaintiff that the market for the coins would have to double and double again for him to merely recoup the value of his purported investment. In contrast, Defendant affirmatively told Plaintiff not to sell the coins and hold onto them so that they could accrue in value.

19.    Defendant never told Plaintiff that Defendant knew that, based upon his purchase price, Plaintiff was only purchasing the coins for novelty value, as a "keepsake" or otherwise that at the price the coins were not "investment" assets that were likely to appreciate enough to warrant the price.

20.    Defendant never explained to Plaintiff that his purchases would not result in any profit if he decided to sell the coins that he thought he was purchasing to ensure financial security.

21.    Plaintiff, an elderly gentleman, purchased the coins after Defendant made misrepresentations regarding the material aspects of the coins sold, including their performance, efficacy, nature, investment value, central characteristics, liquidity, earnings potential, and profitability.  These were made in clear violation of Minn. Stat. § 80G.07.

22.    Plaintiff had no reasonable way to discover the coins' true value until he attempted to sell the coins to provide for his daughter's wedding, which occurred on October 29, 2017.  Thereafter, Plaintiff advised the Office of the Minnesota Attorney General about Defendant's fraudulent and unlaw scheme.  Plaintiff also retained an attorney to make a demand on Defendant.  Defendant provided no relief to Plaintiff at that time.

## CLASS ACTION ALLEGATIONS

23.    This action is brought, and may be properly maintained, as a class action under Rule 23 of the Federal Rules of Civil Procedure. All requisite elements of Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) are satisfied; there is a well-defined community of interests in the litigation; the proposed Class and any subclasses are ascertainable; and a single class action is the superior manner to proceed when compared to the joinder of thousands, or tens of thousands, of individual cases challenging the same practices.

24.    Plaintiff brings this action individually on behalf of themselves, and on behalf of the Class and Subclass defined below, for which Plaintiff is a member, under

Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure seeking damages, restitution, and injunctive relief pursuant to the applicable laws set forth in the state law counts below.

25.    This action is brought on behalf of a national class, consisting of:

All ascertainable persons in the United States who purchased one or more coins from either Westminster Mint, or any of its affiliates, successors, predecessors or assigns from 2010 until the present. Excluded from the Class are Defendant, its corporate parent, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, assigns of any such excluded persons or entities, and the attorneys for Plaintiff herein.  Also excluded from the Class are any judges presiding over these proceedings and their immediate family members (the "Class").

26.    This action is also brought on behalf of an elder subclass, consisting of all Class members who were age 62 or over at the time they made the purchase (the "Elder Subclass").

27.    The Class Period for the Class and Elder Subclass dates back to the longest applicable statute of limitations for any claims asserted on behalf of that Class or Elder Subclass from the date this action was commenced and continues through the present and to the date of judgment.

28.    **Typicality**:  Plaintiff's claims are typical of other Class members' claims because Plaintiff, like every other Class member, was exposed to virtually identical conduct and was overcharged.  Further, Plaintiff's claims are typical of those of the Elder Subclass since he was over the age of 62 when he made his purchases.

29.    **Numerosity**:  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact numbers of Class members are unknown to

Plaintiff currently, Plaintiff, on information and belief, believes that the numbers exceed 1,000.

30.    **Ascertainability**. The identities of individual Class members are readily ascertainable through appropriate discovery from records maintained by Defendant and its agents.

31.    **Superiority**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote and individual members do not have a significant interest in individually controlling the prosecution of separate actions.   No difficulty will be encountered in this case's management to preclude maintenance as a class action.

32.    **Common Questions of Law and Fact Predominate**:  The questions of law and fact common to the Class predominate over questions affecting only individuals. Among the questions of law and fact common to the Class are:

a.    Whether Defendant employed a scheme or artifice to defraud Plaintiff and the Class;

b.    Whether Defendant's widespread sales practices constitute a violation of Minn. Stat. § 80G.07;

c.    Whether Defendant's conduct violated Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.67 and Minn. Stat. § 325F.69;

d.    Whether Defendants' conduct violated Minnesota's Prevention of Consumer Fraud Act's, which protects seniors, Minn. Stat. § 325F.71;

e.    Whether Defendant's conduct violated Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*;

f.    Whether Defendant's policies allowed them to induce class members to pay well above market value for the coins;

g.    Whether Plaintiff and the Class members were overcharged;

h.    Whether Defendant utilized other schemes to injure Plaintiff and the Class in ways heretofore obscured;

i.    Whether Defendant unlawfully charged Plaintiff's and Class members' credit or debit cards;

j.    Whether Plaintiff and the Class are entitled to rescission;

k.    Whether Defendant's billing practices were fraudulent;

l.    Whether Defendant's profits should be disgorged and if so, the proper calculation of damages;

m.    Whether the Class is entitled to restitution and if so, the proper calculation of such restitution;

n.    Whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

o.    Whether Plaintiff and the Class is entitled to injunctive relief;

p.    Whether Plaintiff and the Class are entitled to damages, and if so, the proper calculation of said damages.

33.    **Manageability**: This class action litigation will be manageable because the issues are identical, and individualized calculation of damages can be accomplished

methodically by an expert via the use of data and information provided by Defendant and its agents.

34.    **Adequacy**:  Plaintiff can fairly and adequately represent the Class's interests; Plaintiff have no conflicts of interest with other Class members, and he has retained counsel competent and experienced in class action and complex civil litigation.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

35.    Defendant knew or reasonably should have known that the market value of the coins was worth substantially less than what Plaintiff was buying. Defendant intentionally concealed material information and the truth concerning the value and investment properties of the coins from Plaintiff and the public, while continuing to assert that the coins were appreciating approximately 10% a year or greater.

36.    Defendant affirmatively represented to Plaintiff and the public that the coins, specifically graded coins by ANACS, would appreciate in value and were a better investment opportunity than maintaining funds in an IRA. Through these representations, Defendant created a reasonable expectation, among Plaintiff and similarly situated ordinary consumers that the coins would appreciate over time and were a good investment.

37.    Defendant's acts of fraudulent concealment also include, but are not limited to, failing to disclose that the coins had no investment value.

38.    Because Defendant continued to misrepresent the quality and value of the coins, Plaintiff was not reasonably able to discover the coins true value, notwithstanding his exercise of due diligence.

39.    Plaintiff had no reasonable way to discover the coins true value until he attempted to sell the coins to provide for his daughter's wedding, which occurred on October 29, 2017.  Defendant had a duty to disclose the true investment value of the coins.

40.    Based on Defendant's misrepresentations and concealment, Defendant is equitably estopped from asserting a statute-of-limitations defense.

41.    Alternatively, to the extent Defendant made statements that induced Plaintiffs or the Class to not sell the coins and hold onto the coins until their investment value appreciated, Defendant is equitably estopped from asserting a statute-of-limitations defense.

## CLAIMS FOR RELIEF

**<u>First Claim for Relief</u> - Negligence Per Se**

42.    Plaintiff realleges and incorporates each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

43.    Minnesota Statute § 80G.07 imposes a fixed duty of care that coin dealer and dealer representatives, including Defendant, are to use with consumers, like Plaintiff and members of the Class.

44.    This statute requires that a dealer or dealer representative shall not misrepresent the material aspects of the coins sold, including their performance, efficacy, nature, investment value, central characteristics, liquidity, earnings potential, and profitability.  Minn. Stat. § 80G.07.

45.    Plaintiff and the Class are within the intended protection of Minn. Stat. § 80G.07 and the harm suffered by Plaintiff and the Class is the kind of harm Minn. Stat. § 80G.07 is intended to prevent.

46.    Defendant thus owed Plaintiff and the Class a duty to accurately represent the material aspects of the coins sold, including their performance, efficacy, nature, investment value, central characteristics, liquidity, earnings potential, and profitability.

47.    Defendant breached that duty by misrepresenting the material aspects of the coins sold, including their performance, efficacy, nature, investment value, central characteristics, liquidity, earnings potential, and profitability.

48.    Defendant's breach of the duty established by Minn. Stat. § 80G.07 proximately caused harm to Plaintiff and the Class because Plaintiff and the Class purchased coins for prices far above the market price for the coins and even more than the fair market value of the metals in the coins.

49.    Plaintiff and the Class thus seek rescission and restitution, or compensatory damages.


**Second Claim for Relief - Violations of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68 *et seq.* (actionable under Minn. Stat. § 8.31(3a)) and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 *et seq.***

50.    Plaintiff realleges and incorporates each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

51.    This Count is based on Defendant's deceptive and misleading conduct and common omissions of material fact.

52. Minnesota's consumer protection laws, particularly the Minnesota Prevention of Consumer Fraud Act ("MPCFA") and the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), are remedial in nature and all broadly prohibit deceptive, unfair, and misleading practices directed at consumers in the course of business, including those alleged to have been conducted by Defendant as described herein.

53. Plaintiff and the Class are persons within the meaning of the MPCFA, Minn. Stat. § 325F.68, subd. 3, and MUDTPA, Minn. Stat. § 325D.44.

54. The items for which Defendant charged Plaintiff are goods, services, and/or merchandise within the meaning of the MPCFA, Minn. Stat. § 325F.69, subd. 1, and MUDTPA, Minn. Stat. § 325D.44, subd. 1(2), (3), (5), (7), and (13).

55. Defendant charged Plaintiff directly for the goods, services, and merchandise at issue.

56. Defendant marketed and sold coins to Plaintiff and the Class in a deceptive and misleading manner in violation of the MPCFA and the MUDTPA.

57. As described above, Defendant systematically and regularly engaged in selling coins, overpricing them, obfuscating and concealing their true value, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

58. Defendant violated the MPCFA and MUDTPA by, among other things, misrepresenting the quality of the coins, including their value and future value; allowing Plaintiff and the Class to operate under an obvious mistaken belief about the value and utility of the coins; selling the coins to Plaintiff and the Class members in a manner and at

a price that relied upon a misapprehension and lack of understanding about the qualities, characteristics, uses, benefits of the coins which the coins lacked; advertising the sale of certain coins with the intent to sell other coins for more money; making omissions regarding the reasons for price of the coins; representing that the consumer stands to receive an economic benefit which is contingent on an external factor (the market) without disclosing the truth about the contingency or its likelihood to occur.

59.    These practices were not isolated incidents but rather the result of widespread, systematic, pervasive, and persistent conduct and business policies adopted by Defendant, which were aimed at maximizing Defendant's revenue at the expense of its customers.

60.    The practices in which Defendant engaged were likely to cause confusion in Plaintiff and members of the Class.

61.    The MPCFA and MUDTPA prohibit unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

62.    Defendant violated the MPCFA and MUDTPA, causing Plaintiff and members of the Class injury and financial loss. Additionally, the risk of future injury remains unless enjoined.

63.    Defendant, through its employees and agents, engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses. Defendant engaged in deceptive, unconscionable, and/or unfair business practices by, among other things: selling coins, overpricing them, obfuscating and

concealing their true value, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

64.    The amounts Defendant charged, collected, and deducted from bank accounts (or otherwise billed and collected) are material terms to Defendant's customers, including Plaintiff and the Class.

65.    Price is a material term to consumers. Deceptively overcharging consumers in a manner they are unlikely to detect within a short time period is a material misrepresentation or an omission of material fact to reasonable consumers in the Class. The misconduct described herein occurred in a regular and continuous manner and Class members were injured because Defendant maintained incentive programs for its employees and agents that provided financial incentives to engage in such conduct.

66.    Defendant never told Plaintiff or the Class that it engaged in "cramming" and/or maintained internal incentive programs aimed at increasing its revenues by charging its customers with overpriced coins, selling coins, and convincing an unwitting public that the coins are valuable and worth what they are charging for them. The omission of such facts was material, as reasonable consumers contemplating transactions with Defendant, either initially or on an ongoing basis, would have wanted to know about such practices prior to engaging in such transactions. Reasonable consumers, had they been made aware of such facts, would have acted differently, including but not limited to—if able—not purchasing the coins.

67.    Defendant had a duty to disclose material facts to Plaintiff and members of the Class. The information concealed was in the exclusive possession of Defendant and not

able to be obtained by Plaintiff and Class members from other sources. Additionally, Defendant made partial statements about price in the form of sales representations and billing statements. Having spoken and provided partial information, Defendant had an affirmative duty to fully disclose all facts, including the existence of internal incentive programs aimed at overcharging Plaintiff and the Class.

68.     Defendant's misrepresentations were directed at and affected a broad group of consumers including Plaintiff and the Class.

69.     Defendant's sales practices were intended to, and were likely to, deceive consumers acting reasonably under the circumstances. Defendant intended Class members to rely on it to accurately sell the products requested. Defendant failed to do so and instead intentionally overcharged Plaintiff and the Class.

70.     Under the MPCFA and MUDTPA, an objective test is employed in determining whether a practice is likely to deceive a consumer acting reasonably. That is, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission of material fact at issue. Defendant acted with the intent that Plaintiff and members of the Class rely on its concealment, suppression, or omission, in connection with the sale or advertisement of goods and services, and therefore engaged in unlawful practices in violation of these statutes.

71.     It is very difficult to obtain an independent public assessment of a bullion coins value. Therefore, Defendant knows that certain customers may not know that the value of the coins are not worth what Defendant is charging for them, immediately notice such discrepancies, and immediately seek corrections when appropriate. Defendant seeks

to exploit and take advantage of that dynamic. Defendant intended to harm competition by engaging in the foregoing conduct.

72.    For Defendant's violation of MPCFA, under Minn. Stat. §§ 8.31, subd. 3a, Plaintiff and members of the Class are thus entitled to recover damages, costs and disbursements, including costs of investigation, and reasonable attorneys' fees, and receive other relief as determined by the court.

73.    Defendant, through its employees and agents, engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses. Defendant engaged in deceptive, unconscionable, and/or unfair business practices by, among other things: selling coins, overpricing them, obfuscating and concealing their true value, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

74.    Defendant's conduct as described above constitutes an unfair and deceptive trade practice under Minn. Stat. § 325D.44, subd. 1, and it is unlawful under Minn. Stat. §§ 325F.67, and 325F.69.

75.    Defendant continues to engage in cramming and/or maintain internal incentive programs aimed at increasing its revenues by charging its customers with overpriced coins, selling coins, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

76.    For Defendant's violation of MUDTPA, under Minn. Stat. § 325D.45, subds. 1-2, Plaintiff and members of the class are entitled to equitable and injunctive relief as the Court considers reasonable without proof of monetary damages, lost profits or intent to

deceive, and Plaintiff and member so the class are entitled to an award of attorneys' fees as determined by the Court.

**Third Claim for Relief - Violation of the Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act ("SCDPA"), Minn. Stat. §§ 325F.71 *et seq.* (Brought by the Elder Subclass Against Defendant)**

77.     Plaintiff realleges and incorporates each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

78.     Count III is brought on behalf of Plaintiffs and members of the Elder Subclass.

79.     Plaintiff is a "senior citizen" under Minn. Stat. § 325F.71, subd. 1, since he is a person who is 62 years of age or older.

80.     Defendant violated the MPCFA and MUDTPA, and these violations provide for additional remedies to Plaintiff and members of the Elder Subclass under Minn. Stat. § 325F.71.

81.     Under Minn. Stat. § 325F.71, subds. 3-4, Plaintiff and other members of the Elder Subclass are entitled to recover damages, restitution, equitable relief as determined by the Court, costs and disbursements, including costs of investigation, and reasonable attorneys' fees. Minn. Stat. § 325F.71, subd. 2 imposes an additional civil penalty of $10,000 per violation.

**Fourth Claim for Relief - Unjust Enrichment (By Plaintiff and the Class Against Defendant)**

82.     Plaintiff realleges and incorporates each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

83.    By taking advantage of Plaintiff and the Class's unequal information and bargaining power, selling multiple coins to the same people, obfuscating the true nature of the coins' value and the secondary market for such coins, and targeting vulnerable purchasers, Defendant has retained the moneys charged for such coins at rates that would not prevail in an arm's length and just marketplace.

84.    It would be inequitable and unjust for Defendant to retain the profits, benefits, interest, and other compensation obtained through their wrongful conduct, which is in express violation of Minnesota law, including but not limited to Minn. Stat. § 80G.07.

85.    As a result of this unjust enrichment, Plaintiff and the Class seek restitution in an amount sufficient to compensate them for their losses. These losses include the amount Defendant was unjustly enriched by the excess amount(s) charged to Plaintiff and the Class.

86.    Plaintiff and the Class further seek an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## JURY TRIAL REQUESTED

87.    Plaintiff, on behalf of herself and the Class members, demand a jury trial in this action for all the claims so triable.

## PRAYER FOR RELIEF

88.     Plaintiff, on behalf of himself and the Class members, pray for the following relief:

a.      An Order appointing Plaintiff as Interim Class Representative and appointing undersigned counsel as Interim Class Counsel;

b.      An Order certifying the Class and the Elder Subclass, designating Plaintiff as Lead Plaintiff and undersigned counsel as Class Counsel;

c.      An Order permanently enjoining any further solicitations by Defendant;

d.      An Order of restitution and disgorgement for Plaintiff and the Class members;

e.      An Order for a $10,000 civil penalty assessed per violation committed against a Class Member aged 62 or older;

f.      An Order awarding compensatory and other damages;

g.      An Order awarding Plaintiff and the Class attorneys' fees, reimbursement of costs of suit and expenses.

h.      An Order for statutory prejudgment interest; and

i.      All other relief that the Court believes is reasonable and just.

Dated: May 4, 2021                    Respectfully submitted,

                                     **CHESTNUT CAMBRONNE PA**


                                     *s/Bryan L. Bleichner*
                                     Bryan L. Bleichner (#0326689*)*
                                     Jeffrey D. Bores (#227699)
                                     Christopher P. Renz (#0313415*)*
                                     100 Washington Avenue South, Suite 1700
                                     Minneapolis, MN 55401
                                     Phone: (612) 339-7300
                                     Fax: (612) 336-2940
                                     *bbleichner@chestnutcambronne.com*
                                     *jbores@chestnutcambronne.com*
                                     *crenz@chestnutcambronne.com*

                                     **STECKLER WAYNE COCHRAN PLLC**
                                     Bruce W. Steckler (*pro hac vice to be filed)*
                                     Texas Bar No. 00785039
                                     Austin P. Smith (*pro hac vice* to be filed)
                                     Texas Bar No. 24102506
                                     12720 Hillcrest Road, Suite 1045
                                     Dallas, Texas 75230
                                     Phone: (972) 387-4040
                                     Facsimile: (972) 387-4041
                                     *Bruce@sgc.law*
                                     *Austin@sgc.law*

                                     ***Attorneys for Plaintiff and the Proposed Class***